Connor-Willie Charles
















IN THE
TENTH COURT OF APPEALS
 

No. 10-96-233-CR

     WILLIE CHARLES CONNOR,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 
 
From the 77th District Court
Limestone County, Texas
Trial Court # 8568-A
                                                                                                                 

O P I N I O N
                                                                                                                 

      Appellant Connor appeals from his conviction for Failure to Appear, for which he was
sentenced to 9 years in the Institutional Division of the Texas Department of Criminal Justice and
a $5,000 fine.
      Appellant was on probation for 8 years for forgery.


 The court modified the terms of his
probation to require him to attend the Substance Abuse Felony Program (SAFP). The judge's order 
released Appellant overnight to take care of personal matters, but ordered him to report the next
day to the jail at 5:00 p.m. Appellant did not report. He was arrested three weeks later and was
indicted for failure to appear as ordered. Trial was to a jury which found Appellant guilty and
assessed his punishment at 9 years in prison and a $5,000 fine.
      Appellant appeals on 8 points of error.
      Point 1 asserts the trial court erred in refusing to dismiss the jury panel in response to
Appellant's Batson challenge.
      The State peremptorily struck Jurors 18, 20 and 23. Appellant moved to dismiss the jury panel
on the ground that the three jurors struck by the State were minority members of the jury panel. 
The State responded that Juror 18 was struck because he had been tried for DWI three times, for
failure to appear two times and on two motions to revoke; that he had been handled seven or eight
times; and that he had lied on his juror information form when he checked that he had not ever been
accused. The State responded that Juror 20 was seen talking with the defendant prior to voir dire. 
The State responded that the prosecutor had known Juror 23 a long time and was real hesitant as
to whether he could be fair in the case.
      The trial judge found that systematic exclusions of minority people had not been shown and
that the State had presented race-neutral reasons for the challenges to Jurors 18, 20 and 23.
      It is constitutionally impermissible to exercise a peremptory strike on the basis of race. Batson
v. Kentucky, 476 U.S. 79 (1986). To raise a Batson challenge, the opponent of the strike must
make a prima facie showing of the State's discriminatory use of the strike. Purkett v. Elem, 115
S.Ct. 1769, 1790 (1995); Emerson v. State, 851 S.W.2d 269, 273 (Tex. Crim. App. 1993). Once
the opponent makes a prima facie showing, the proponent of the strike has the burden to produce
a race-neutral explanation of the strike. Purkett, at 1770, 1771. If a race-neutral explanation is
given, the opponent of the strike must prove purposeful racial discrimination. Id. When the State's
explanation is race-neutral on its face, the burden of persuasion shifts back to the accused to
establish by a preponderance of the evidence that the reasons given were merely a pretext for the
State's racially-motivated strike. Salazar v. State, 818 S.W.2d 405, 409 (Tex. Crim. App. 1991);
Williams v. State, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991). At a minimum, this requires some
effort be exerted by the accused to rebut the explanation by the State. Calderon v. State, 847
S.W.2d 378, 382 (Tex. App.—El Paso 1993).
      A reviewing court must consider the evidence in the light most favorable to the trial court's
ruling. Salazar, at 408. Here, the State established a racially-neutral explanation for its challenge
of each of the three jurors. The trial court found each reason constituted a racially-neutral
explanation. 
      Appellant did not rebut the explanations given by the State and has failed to demonstrate that
the trial court's ruling was clearly erroneous. Vargas v. State, 838 S.W.2d 552, 555 (Tex. Crim.
App. 1997). Unless we are left with a firm conviction that a mistake has been made, the trial
court's ruling should not be disturbed. Vargas, at 554. We do not believe the trial court's ruling
to be erroneous.
      Point 1 is overruled.
      Point 2 asserts the evidence conclusively establishes that the order to appear was incident to
community supervision and therefore cannot support a conviction for failure to appear. Tex.
Penal Code, § 38.10(b).
      The court's order for Appellant to appear was contained in an order modifying probation. 
Appellant is mistaken in his assertion that it was incident to community supervision.
      Point 2 is overruled.
      Appellant's point 3 asserts there is no evidence that Appellant intentionally failed to appear.
      Appellant's point 4 asserts the underlying order was legally too vague and unclear to support
a failure to appear charge or conviction.
      Appellant's point 5 asserts there is a variance between the indictment and the evidence.
      Appellant, at the time of hearing, was incarcerated in the Limestone County jail and had been 
for some time. Appellant was present at the motion to revoke his probation on November 21,
1995. After the judge modified his conditions of probation to require him to participate in the
Substance Abuse Felony Punishment Facility, the court, in response to a request by Appellant,
added in his own hand to the prepared order: "Defendant shall be released from custody on
11/21/95 and must report to the Sheriff's office at 5:00 p.m. 11/22/95 to return to custody.
      Appellant's indictment stated that on or about 22 November 1995:
. . .after being lawfully released from custody on condition that he subsequently report to
the Limestone County jail intentionally and knowingly failed to appear in accordance with
the terms of his release, to-wit: Defendant was ordered by the court to return to jail and
the defendant did then and there fail to appear on the 22nd day of November 1995, in the
County Jail of Limestone County, Texas, and the offense for which [Appellant's] was
required is a felony.
 
      Appellant was in the county jail before he was released on a one-day furlough by the judge. 
He knew where the jail was and to where he was to return.
      Appellant did not return to the Sheriff's office or the jail on November 22, 1995, or until he
was arrested three weeks later. Appellant intentionally failed to appear; the underlying order is not
vague and unclear, but specific and clear; and there is no variance between the indictment and the
evidence.
      Points 3, 4 and 5 are overruled.
      Point 6 asserts the trial court erred by not allowing the jury to consider probation because
Appellant's felony convictions had not become final and were still on appeal.
      Appellant is mistaken. His felony convictions were final; it was the revocations of Appellant’s
felony probations which were on appeal. The trial court correctly overruled his request that the
jury be charged on probation. Franklin v. State, 523 S.W.2d 947 (Tex. Crim. App. 1975; Branch
v. State, 704 S.W.2d 331 (Tex. App.—Corpus Christi 1995).
      Point 6 is overruled.
      Point 7 asserts the trial court erred in allowing evidence of prior convictions at the punishment
phase for the reason the convictions were not final and were on appeal.
      The trial court did not err. Article 37.07, Texas Code of Criminal Procedure, sec. 3(a)
provides that evidence may be offered by the State after a finding of guilty of any “extraneous
crime” regardless of whether he has been “finally convicted of the crime.” Moreover, Appellant’s
convictions were final and, as noted, in our discussion of Point 6, it was the revocation of the
probation which was on appeal.
      Point 7 is overruled.
      Point 8 asserts the trial court erred in admitting evidence of a prior misdemeanor conviction
because the conviction was obtained through direct contact between himself and the State’s attorney
while he was represented by counsel.
      Appellant asserts the contact is a violation of Disciplinary Rule 4.02(a) and that he did not
intelligently waive his right to counsel. Disciplinary Rule 4.02(a) provides: 
In representing a client, a lawyer shall not communicate or encourage another to
communicate about the subject of the representation with a person, organization or entity
of government.
      The preamble of Disciplinary Rules states: “These rules are not designed to be standards for
procedural decisions.” The rules attempt to induce ethical behavior by stating minimum standards
of conduct below which a lawyer may be subjected to disciplinary action. Delta Air Lines v..
Cooke, 908 S.W.2d 632-33 (Tex. App.—Waco 1995). Appellant’s complaint based on an alleged
disciplinary-rules violation is without merit.
      Point 8 is overruled. The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)
 
Before Justice Cummings,
      Justice Vance and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed July 23, 1997
Do not publish 



note12" class="WPFloatStyle">' );
 document.write( WPFootnote12 );
 document.write( '
Close' );
 document.write( '' );
 }

 Accordingly, we hold that the
trial court properly granted summary judgment against Barron with regard to her allegations of
negligent maintenance of the bridge and guardrails.
Premise Defect
      In response to the Department's motion for summary judgment, Barron argued that the bridge
constituted a "special defect." Although the Tort Claims Act does not define a special defect, it
provides two examples: excavations or obstructions on highways.


 Whether a condition is a
premise defect or a special defect is a question of law.


 Conditions on or near a road can be
special defects such as excavations or obstructions only if they pose a threat to the ordinary users
of a particular roadway.


 Barron has failed to point to any condition on the bridge that constituted
a special defect which was "like an excavation or obstruction on the highway."


 Because any
defect that might have existed cannot, as a matter of law, be considered "special," we will consider
the State's duty of care with respect to premise defects.
      According to section 101.022(a), "If a claim arises from a premise defect, the governmental
unit owes to the claimant only the duty that a private person owes to a licensee on private
property, unless the claimant pays for the use of the premises."


 Therefore, the duty owed by the
Department to Barron was not to injure her by willful or wanton conduct or by gross negligence.


 
However, if the owner or occupier has actual knowledge of a dangerous condition and the licensee
does not, the owner or occupier owes a duty to correct the defect and make the condition
reasonably safe or to warn the licensee of the condition.


 Barron did not plead that the
Department engaged in any willful or wanton conduct or gross negligence. She contends only that
the Department was negligent in failing to warn her of the dangerous condition. The Department
responds that there was no dangerous condition for which it had the duty to warn, arguing that the
highway did not cause the accident.


 Accordingly, we now turn to the proximate cause grounds
raised by the Department's motion for summary judgment.
Proximate Cause
      The Department's third ground for summary judgment was that the failure to provide a
guardrail which would stop Barron's car was not a proximate cause of the collision. Similarly,
in ground four, the Department argued that its failure to maintain the guardrail was not a
proximate cause of Barron's car going through the rail.
      Barron testified by deposition that there was nothing about the road or anything connected
with the highway that caused the accident to happen. She also acknowledged that there were "no
bumps, no ridges, no nothing" on the roadway that might have contributed to the accident. 
Furthermore, Barron's expert witness testified that, in his opinion as an engineer, Barron lost
control of her vehicle before it hit the guardrail and that the roadway did not contribute to the
accident.
      Accidents in which drivers lose control of their vehicles and leave the roadway are not
uncommon. And in a sense such accidents are foreseeable. However, when not brought about
by some defects in the highway, they are not incident to ordinary travel and do not happen as a
result of the ordinary use of the highways.


 Therefore, as a matter of law, the Department's
failure to provide a guardrail that would have prevented her vehicle from falling off the bridge
cannot constitute negligence proximately causing the accident in question.


 Moreover, Barron
testified that, had there been a warning sign on the highway before the bridge, she would have
done nothing differently. Because the bridge did not cause Barron's accident, and because the
Department's failure to warn was not a proximate cause of her injuries, we conclude that the trial
court properly granted summary judgment against Barron on her premise liability claim.
      We overrule Barron's single point of error and affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed July 20,1994
Publish